# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| INSURANCE COMPANY OF THE WEST,<br><br>    Plaintiff,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY, *et al*.,<br><br>    Defendants. | Case No. 2:09-CV-02150-KJD-LRL<br><br>**ORDER** |

Presently before the Court is Defendants' Motion to Dismiss (#6). Plaintiff has filed an opposition in response (#15), to which Defendants replied (#17).

**I. Background**

ANSE is a company that performs stucco work for developers and general contractors that build homes. (See #6 at 3). It recently provided such services to Dell Webb Communities ("Dell Webb") in Summerlin, Nevada. (See id.). Later, approximately 570 home-owners filed a lawsuit against Dell Webb in Nevada State Court. (See #1 at 3–4; #6 at 7). Dell Webb, in turn, filed suit against ANSE as a third-party defendant, for allegedly having provided shoddy stucco services which resulted in damage to the residential homes in the Dell Webb development. (See #1 at 3; #6 at 3).

Seventy-one of the 570 plaintiffs were awarded a judgment in state court, and the rest of the plaintiffs in that action have appealed the case to the Nevada Supreme Court.  (See #6 at 7–8).

Plaintiff Insurance Company of the West ("ICW") insures ANSE.  (See #1 at 2).  So do Defendants Great American Insurance Company ("GAIC"), Federated Service Insurance ("Federated"), and St. Paul Fire & Marine Insurance Company ("St. Paul").  (See id. at 3).  Plaintiff alleges that ICW, GAIC, Federated, and St. Paul all accepted the responsibility to defend and indemnify ANSE in its proceedings against Dell Webb.  (See id. at 3–4).  While the parties have not agreed to a particular method of allocating ANSE's defense costs, they did agree to a "time on the risk" allocation of indemnity costs.  (See id. at 4).

There are at least three ways of splitting up legal defense costs among insurance companies.  The first, and most simple, is to have each insurance company pay an equal share of the costs.  This is known as the "equal share" basis.  See, e.g., Wooddale Builders, Inc. v. Md. Cas. Co., 722 N.W.2d 283, 302–04 (Minn. 2006).  A second way to allocate costs is to determine the time period during which each insurance company has insured the policy-holder (during the time that the policy-holder is liable for wrongdoing, of course), and to assess the legal costs to each insurance company based on those time periods.  The longer an insurance company has insured the policy-holder during the relevant time period, the more it is required to pay for legal services.  This is known as the "time on the risk" basis of apportioning costs.  See, e.g., Centennial Ins. Co. v. United States Fire Ins. Co., 88 Cal. App. 4th 105, 112 (Cal. Ct. App. 2001).  A final way to apportion costs is simply to determine each company's responsibility to indemnify the policy-holder once there has been a final judgment or settlement.  Each insurance company is then liable for legal costs based on each company's liability for indemnification.  This is called the "defense follows indemnity" basis of apportioning costs.  See, e.g., St. Paul Fire & Marine Ins. Co. v. Valley Forge Ins. Co., 2009 WL 789612 (N.D. Ga. 2009).

Plaintiff alleges that although Defendants agreed to a "time on the risk" basis of apportioning indemnity costs, Plaintiff was charged, paid, and continues to pay, ANSE's legal expenses based on the "equal share" basis.  (See #1 at 3–7).  It appears that the parties agreed to the apportionment of

indemnity, but that they did not agree on a particular basis of apportioning legal defense costs. (See #1 at 3–7). Plaintiff alleges that the "equal share" basis of apportioning costs is inequitable, and asks this Court for a declaration that only the "time on the risk" basis of apportioning costs is appropriate in this case. (See #1 at 5–6). Plaintiff then asks the Court to compel Defendants to repay the extra money that Plaintiff has contributed to ANSE's legal costs, under a theory of equitable contribution. (See id. at 6–7). Defendants, in turn, filed a Motion to Dismiss, asking the Court to abstain from exercising its discretionary jurisdiction under 28 U.S.C. § 2201(a), arguing that this case raises undecided issues of state law, and that this case also presents a significant risk of duplicative litigation. (See generally #6; #13).

**II. Standard for Motion to Dismiss**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Iqbal evaluation illustrates a two-prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. See id. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. See id. at 1950.

Where, as here, a party requests declaratory relief, a motion to dismiss filed under Fed. R. Civ. Pro. 12(b)(1) or 12(b)(6) is treated as a request for the district court not to exercise jurisdiction

over the case.  See, e.g., Carlin Equities Corp. v. Offman, 2007 U.S. Dist. Lexis 61465, *2 (S.D.N.Y., Aug. 22, 2007) (considering a 12(b)(1) motion as a motion to dismiss pursuant to doctrine of abstention); Beres v. Village of Huntley, 824 F. Supp. 763, 766 (N.D. Ill. 1992) (noting that a 12(b)(1) motion is "an appropriate method for raising the issue of abstention").  Such a request is governed by the Declaratory Judgment Act.  See 28 U.S.C. § 2201(a); MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 126 (2007).  Under the Declaratory Judgment Act, the Court's exercise of jurisdiction is discretionary.  See Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995); Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942).  The Court may not "decline to entertain such an action as a matter of whim or personal disinclination," Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998), but instead must "make a sufficient record of its reasoning to enable appropriate appellate review."  Id. at 1225.  The Ninth Circuit has set forth a non-exhaustive list of three factors that that the Court should take into consideration when determining whether to exercise jurisdiction under 28 U.S.C. § 2201: (1) whether the exercise of jurisdiction would require the "needless determination of state law issues;" (2) whether the exercise of jurisdiction would encourage forum shopping; and (3) the general preference to "avoid duplicative litigation."  Huth v. Hartford Ins. Co. of the West, 298 F.3d 800, 803 (9th Cir. 2002).  These rules apply when a party seeks declaratory relief alone, and also where a party asks for compensation that is not "independent" of the declaratory action.  See United Nat'l Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1112 (9th Cir. 2001).

**III. Motion to Dismiss Analysis**

Defendants argue that the Court should not exercise its discretionary jurisdiction in this case for two reasons.  First, Defendants argue that exercising jurisdiction over Plaintiff's case would require the Court to "decide an open question of state law." (#6 at 6).  Second, they argue that if the Court were to exercise jurisdiction in this case, it would be required to "decide questions of fact that are currently pending in the state court action." (Id.).

The Court agrees that exercising jurisdiction over Plaintiff's claim would be unwise. First, Defendants correctly note that the question before the Court—that of whether the "time on the risk" basis of allocating costs is more equitable than the "equal share" basis—has not yet been decided in Nevada. Plaintiff has not cited any case to the contrary, and the Court, after an independent inquiry, has also been unable to find any Nevada case addressing the issue. (See generally #15). Moreover, different states have taken different approaches with respect to the allocation of insurers' defense costs. Compare Wooddale Builders, Inc., 722 N.W.2d at 302–04 (holding that defense costs should be allocated on an equal share basis, where substantive liability is based on a time-on-the-risk basis) with Centennial Ins. Co., 88 Cal. App. 4th at 113–14 (Cal. Ct. App. 2001) (upholding the trial court's determination that defense costs should be allocated based on the time-on-the-risk basis).

Similarly, Plaintiff alleges that the parties agreed to a time on the risk basis of allocating indemnification costs under the substantive action against ANSE. (See #1 at 4). It is not clear how Nevada courts treat such an agreement. Additionally, it is not clear under Nevada law whether such an agreement would affect the determination of which allocation method is most equitable. At least one court has found this consideration to be important in determining which allocation of defense costs to impose. See Wooddale Builders, 722 N.W.2d at 302–04. Given the several moving parts required for adjudication in this case—none of which have been determined by Nevada courts—the Court finds that it would have difficulty making anything more than "uncertain or ephemeral interpretations of state law." Mitcheson v. Harris, 955 F.2d 235. 238 (4th Cir. 1992) (citation omitted). Abstention is therefore the more sensible course of action in this case. See Huth, 298 F.3d at 804 (upholding the district court's decision to decline jurisdiction where the issue in the case was one of state law); Cont'l Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371 (9th Cir. 1991) (holding that the district court abused its discretion by exercising jurisdiction, in part because it "could have avoided a needless determination of state law").

Second, were this Court to exercise its jurisdiction in this case, there is a concern that duplicative and piecemeal litigation could arise. Plaintiff concedes that the time on the risk

Case 2:09-cv-02150-KJD-LRL   Document 24   Filed 09/29/10   Page 6 of 7

1  calculation could change, depending on the outcome of the appeals in the underlying action against
2  ANSE.  (See #15 at 3, 7).  As such, for this Court to exercise jurisdiction, and simultaneously avoid
3  duplicative litigation, it must either: (1) await the complete adjudication of the appeal that is related
4  to the underlying action; or (2) issue only declaratory relief (assuming that declaratory relief were
5  proper), but not equitable contribution, until it is clear exactly what percentage each insurance
6  company is liable for under a time on the risk basis of allocating costs.  Otherwise, if the Court were
7  to award equitable contribution, and the time on the risk for each insurance company later changed,
8  further litigation would likely be required in order to resolve the difference between the equitable
9  contribution ordered by this Court, and the equitable contribution that would actually have been
10 warranted.  This strikes the Court as inefficient.  See, e.g., Emp'rs Reinsurance Corp. v. Karussos, 65
11 F.3d 796, 800–01 (9th Cir. 1995) (holding that abstention is favored where a declaratory judgment
12 action raised similar factual questions to state litigation), overruled on other grounds by Dizol, 133
13 F.3d at 1220; Cont'l Cas. Co., 947 F.2d at 1373 (noting that piecemeal litigation is disfavored, and
14 that such would be the result if the district court were to determine Plaintiff's rights against one
15 party, but not another).

16     Plaintiff counters that, even so, the Court must exercise its jurisdiction because Plaintiff asks
17 for equitable contribution, in addition to declaratory relief.  (See #15 at 5–6).  However, without the
18 Court's declaration that the equal share basis of allocating costs is inequitable, there is no basis for
19 awarding equitable contribution.  See Karussos, 65 F.3d 796, 800 (9th Cir. 1995) (holding that a
20 monetary claim for contribution of defense costs was dependent upon a declaration that that one
21 party had a duty to defend).  Cf. Rodriguez v. Primadonna Co., 216 P.3d 793, 802–03 (Nev. 2009)
22 (holding that one party must first be found liable before it can be required to pay equitable
23 indemnification to another party); Western Techs., Inc. v. All-Am. Golf Ctr., Inc., 139 P.3d 858, 861
24 (Nev. 2006) (holding that a party is not liable for any portion of contribution that has already been
25 paid by another party, because such contribution is no longer unnecessary).  As such, the claim for
26 equitable contribution is dependent upon the favorable adjudication of the declaratory action.

6

1  Because Plaintiff's equitable contribution claim is not "independent" of its declaratory action claim,
2  the Court's jurisdiction is discretionary, not mandatory.  See United Nat'l Ins. Co., 242 F.3d at 1113.
3  Plaintiff's arguments, therefore, do not persuade the Court to exercise its jurisdiction in this case.
4  **IV. Conclusion**
5       Accordingly, **IT IS HEREBY ORDERED** that Defendant Great American Insurance
6  Company's Motion to Dismiss (#6) is **GRANTED**;
7       **IT IS FURTHER ORDERED** that the Court **DECLINES TO EXERCISE**
8  **JURISDICTION** over Plaintiff's claims for declaratory relief and equitable contribution.
9       DATED this 28TH day of September 2010.

_____
Kent J. Dawson
United States District Judge